## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE No.   1:20-cv-23381

CORAL CASTLE, INC.

     Plaintiff

v.

EPIC GAMES, INC.

     Defendant

_____

## **COMPLAINT**

Plaintiff Coral Castle, Inc. ("CCI" or "Plaintiff"), by and through undersigned counsel, files this Complaint ("Complaint"), and avers and asserts the following claims against Defendant Epic Games, Inc. ("EGI"):

### INTRODUCTION

1.  The case is about *Fortnite*, one of the most popular and best-selling video games of all time.  EGI released *Fortnite* in or around September 2017.  Since that time, the game has had sales exceeding $1,000,000,000.00 (1 Billion Dollars).

2.  One mode of the game is called *Fortnite: Battle Royale*, where one hundred (100) players attempt to survive in a virtual world made up of various cities, towns and landmarks (each a "Location," collectively the "Locations").

3.  The virtual world of *Fortnite* is continually changing, with Locations being added (and removed) on a regular basis.

4.      In some cases these Locations have names coined by EGI, like "Dusty Divot," "Loot Lake" or "Tilted Towers".  In other cases, Locations have the names of fictional places from popular culture, like "Gotham City" and "Westworld."

5.      On or about August 1, 2020, EGI changed the virtual world of *Fortnite: Battle Royale* to add a Location called "Coral Castle," and that is where the issue lies.

## THE PARTIES

6.      Plaintiff CCI is a Florida Corporation with its principal place of business located at 28655 South Dixie Highway, Miami, Florida 33033.

7.      Defendant EGI is a North Carolina Corporation with its principal place of business at 620 Crossroads Boulevard, Cary, North Carolina 27518.

## JURISDICTION AND VENUE

8.      Through this Complaint, Plaintiff asserts claims against Defendant that arise under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*., Florida Common Law, and Florida Statutory Law.

9.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) (federal question; trademarks), as well as 28 U.S.C. § 1332 (diversity).

10.     The Court has subject matter jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367(a) because the state law claims arise out of a common nucleus of operative facts as the federal law claims.

11.     Venue is also proper in this District and Division under 28 U.S.C. §§ 1391(b) and 1400(a) because EGI's activities have caused substantial damage to CCI in this District and Division, and because EGI may be found in this District and Division.

37324261.1

## FACTUAL BACKGROUND

## THE 'REAL' CORAL CASTLE

12.    Coral Castle is a limestone structure created by an eccentric Latvian-American named Edward Leedskalnin (1887–1951).  It is located in unincorporated territory of Miami-Dade County, Florida, between the cities of Homestead and Leisure City.  The structure comprises numerous megalithic stones, mostly limestone formed from coral, each weighing several tons.

13.    Leedskalnin started work on what would become Coral Castle in the early 1920s. He moved the structure at least once during construction, but it has been in its present location since 1936.  Leedskalnin continued to work on the structure until his death in 1951.  Leedskalnin operated Coral Castle as a tourist attraction from 1923 on, charging ten (10) cents admission per person at first.

14.    Leedskalnin's originally named the structure "Rock Gate."  After his death (in 1951), Leedskalnin's family sold the property, and the new owners renamed it "Coral Castle."  It continued to operate as a tourist attraction under the new ownership.

15.    Coral Castle is currently a privately-operated tourist attraction, owned and operated by Plaintiff CCI.

16.    Coral Castle is noted for legends surrounding its creation.  Some claim it was built single-handedly by Leedskalnin using reverse magnetism or supernatural abilities to move and carve numerous stones, each weighing many tons.  Due to its mysterious and mythical background, Coral Castle is often referred to as "Florida's Stonehenge."

17.    Shown below are various images of Coral Castle:



18.    Coral Castle is a world famous and well-known destination and tourist attraction.

19.    Coral Castle is listed on the National Register of Historic Places.

37324261.1

20.     Coral Castle has been featured in various films, including: (1) *The Wild Women of Wongo* (1958), (2) *Nude on the Moon* (1961), and (3) *Jimmy, the Boy Wonder* (1966).

21.     Coral Castle was also featured on an episode of Leonard Nimoy's television program *In Search of…* (1976–1982), entitled "The Castle of Secrets," and on the History Channel series *Ancient Aliens* (Season 8, Episode 2(2014)).

22.     TripAdvisor ranked Coral Castle as one of the Top 35 museums in the United States (out of over 35,000).   Coral Castle has hosted thousands of visitors per year, including several national and local celebrities.   In 2019, Coral Castle was named one of "The 40 Most Mysterious Places in the Whole Entire World" along with places like Area 51 and The Bermuda Triangle.   Coral Castle's Facebook Page has over 69,000 Followers, and over 42,000 "Check-Ins" for the location.   Billy Idol's song 1987 "Sweet Sixteen" is about Leedskalnin's building of the structure, and his video for the song was filmed there.   *See* <u>Ex. C</u>.

### PLAINTIFF'S TRADEMARKS

23.     Plaintiff CCI holds two (2) U.S. Trademark Registrations related to Coral Castle. U.S. Reg. No. 5,057,446 for the mark CORAL CASTLE (the "'446 Registration") was issued on October 11, 2016 and covers services such as "On-line retail store services featuring hats, shirts, books, DVDs, replicas of museum attractions, collectible spoons, thimbles, lapel pins, tie tacks, mints, Christmas ornaments, souvenir patches, shot glasses, bumper stickers, toys, mugs, plates, cups, souvenir tins sold empty, magnets" (in Class 35) and "Museum services" (in Class 41). U.S. Reg. No. 5,057, 447 for the logo mark CORAL CASTLE MUSEUM EST. 1923 ~ MIAMI, FL (And Design) (the "'447 Registration") was issued on October 11, 2016 and covers services such as "Museum services" (in Class 41).   *See* <u>Ex. A</u>.

24.     Plaintiff also owns common law rights in the marks CORAL CASTLE and CORAL CASTLE MUSEUM EST. 1923 ~ MIAMI, FL (And Design) (collectively, the "Trademarks"), based on over forty (40) years of continuous and exclusive use.

25.     The '447 Registration is for the logo shown below, which includes pictorial representations of a castle, a crown, seahorses and a scallop shell.  *See* <u>Ex. A</u>, '447 Reg., Mark Description ("The mark consists of a castle with a seahorse on either side facing inward on a medallion with a crown at the top and leaf designs at either side of the crown, and a scallop shell with leaf designs on either side at the bottom of the medallion…").



## **FORTNITE: BATTLE ROYALE**

26.     *Fortnite* has many different gameplay modes.  In the mode called *Fortnite: Battle Royale*, one hundred (100) players fight for survival throughout multiple Locations on a virtual island.

27.     EGI released the initial version of *Fortnite: Battle Royale* as a paid game.

28.     However, by September 2017, due in part to the success of a competing game called *PlayerUnknown's Battlegrounds* ("PUBG"), EGI re-released *Fortnite: Battle Royale* as a 'free-to-play' game.

29.     As a free-to-play video game, EGI allows players to download and play *Fortnite: Battle Royale* for free.  The game is supported primarily by purchases made within an electronic storefront for virtual use in the game.

30.     For example, players can make in-game purchases of currency, called "V-Bucks." The players, in turn, use V-Bucks to purchase customizations for their in-game avatars, including new characters, vehicles, weapons, clothes and "emotes."

31.     EGI also sells "Battle Passes" that allow the player to unlock unique characters, vehicles, weapons, clothes and "emotes."

32.     EGI presently offers four (4) pricing levels for V-Bucks: (1) 1,000 V-Bucks for $9.99; (2) 2,500 (+300 Bonus) V-Bucks for $24.99; (3) 6,000 (+1,500 Bonus) V-Bucks for $59.99; and (4) 10,000 (+3,500 Bonus) V-Bucks for $99.99.

33.     "Battle Passes" typically cost 950 V-Bucks (a little under $10.00).

34.     In November 2018, Bloomberg announced that *Fortnite* had 200 Million player accounts across all platforms.  *Fortnite's* popularity has translated into record sales for EGI. Analysts have estimated that since its release, Fortnite has generated between $1 billion to $2 billion in revenue, mainly through in-game purchases.

35.     In May 2018, *Fortnite* broke its own record by generating approximately $318 Million in revenue, the biggest month ever for a video game.  In fact, nearly 80 Million people played *Fortnite* in August 2018.

37324261.1

**CHAPTER 2, SEASON 3**

36.      *Fortnite: Battle Royale* has various 'Chapters' and 'Seasons' that change over time.  As of August 1, 2020, the *Fortnite: Battle Royale* experience was being referenced as "Chapter 2, Season 3".

37.      Chapter 2, Season 1 of *Fortnite: Battle Royale* began in October 2019.  Chapter 2, Season 2 began in in February 2020.  The current version (Chapter 2, Season 3) launched on June 17, 2020.

38.      The virtual world of Chapter 2, Season 3 is primarily water-based, with new locations revealed as time passes and the water recedes ("As time goes on and water recedes, even more locations will be uncovered.").   *See*  https://www.epicgames.com/fortnite/en-US/chapter-2-season-3.



39.     The *Fortnite: Battle Royale* map typically has between ten (10) and twenty (20) Locations at any one time.  Below is an image from a current (August 1, 2020) version of the *Fortnite: Battle Royale* map (Chapter 2, Season 3).



40.     In addition to "Coral Castle," Locations on this map include "Sweaty Sands," "Dirty Docks," "Catty Corner" and "Misty Meadows."  No other locations on the current map have the same as famous landmarks (like Coral Castle).

## THE 'VIRTUAL' CORAL CASTLE

41.     The 'virtual' "Coral Castle" (hereinafter "VCC") is a Location in the upper left-hand corner of the above-referenced map.

42.     The map was altered by EGI at some point on August 1, 2020 to reveal VCC for the first time.

9

43.     A *Fortnite* news site released the Tweet below on August 1, 2020 at 1:10 am, which shows VCC:



44.     In the game, VCC appears as a beach area, including islands, sandbars and water features.  VCC also includes various castles, castle walls, stone objects and statutes.  Below is a promotional image of VCC published by EGI:



45.   Additional gameplay images of VCC from Chapter 2, Season 3 are shown below:



37324261.1





46.     As shown above, VCC shares common themes with the real Coral Castle.  Both include nautical/beach motifs, castle structures, partial castle walls, and stone objects.  Both also evoke the feeling of a centuries old mysterious place.

47.     The real Coral Castle markets and advertises using nautical/beach motifs and castle structures to promote the location and their museum services.  As noted above, Plaintiff's '447 Registration for its logo includes both nautical and castle elements.

48.     Upon information and belief, and according to promotions surrounding the release, VCC may have been intended by EGI to be a representation of a modern day Atlantis. *See* <u>Ex. B</u>. ("Fortnite Reveals Coral Castle, And It's A Tiny Atlantis," *GameSpot*, August 8, 2020; "'Fortnite' Map Update Adds Coral Castle, But Don't Call It Atlantis," *NewsGeek*, August 1, 2020).

49.     In fact, the whole theme of "Chapter 2, Season 3" of *Fortnite: Battle Royale* is geared around the DC Comics character "Aquaman," as portrayed by Jason Momoa in the 2018 movie of the same name.  A promotional image showing the Momoa incarnation of Aquaman as a playable character in *Fortnite: Battle Royale* is shown below:



50.     In the movie, and in the comic books, Aquaman's home under the ocean is called "Atlantis."

51.     Upon information and belief, rather than call this new location "Atlantis," EGI intentionally chose to call it "Coral Castle," in clear and willful violation of Plaintiff's rights in the Trademarks.

52.     EGI is utilizing the vast goodwill associated with the Trademarks to promote the nautical theme of Chapter 2 Season 3 of *Fortnite: Battle Royale*, and to promote sales of V-Bucks and Battle Passes, without the consent or approval of CCI, and without compensation to CCI.

## COUNT I

### [TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114]

53.     Plaintiff repeats and re-alleges Paragraphs 1 through 52 as if fully set forth herein.

54.     Plaintiff is the owner of the '446 Registration for the mark CORAL CASTLE and the '447 Registration for the mark CORAL CASTLE MUSEUM EST. 1923 ~ MIAMI, FL (And Design) (collectively, the "Trademarks").

55.     The '446 and '447 Registrations are valid and subsisting.

56.     The Trademarks are inherently distinctive as used in connection with museum services and related retail services.

57.     Plaintiff has developed and maintained substantial secondary meaning in the Trademarks as used in connection with museum services and related retail services.

58.     Defendant, without Plaintiff's consent, has used reproductions, counterfeits, copies and/or colorable imitations of the Trademarks in commerce or in connection with the sale, offering for sale, distribution and/or advertising of Defendant's goods and services, and such use is likely to cause confusion, to cause mistake, and/or to deceive.

14

59.    Defendant's use of the mark "Coral Castle" as a Location in *Fortnite: Battle Royale* is likely to cause confusion, mistake or to deceive the public as to the affiliation, connection or association of Defendant and its goods and services with Plaintiff.

60.    The likelihood of confusion is only exacerbated by the fact that *Fortnite: Battle Royale* and the real Coral Castle share common marketing and advertising themes, such as castles and nautical elements.  Specifically, due to these common themes, purchasers are more likely to believe that the "Coral Castle" Location in *Fortnite: Battle Royale* is authorized, approved and/or sponsored by Plaintiff.

61.    Defendant has used the Trademarks to generate significant income by selling, *inter alia*,  V-Bucks and Battle Passes for Chapter 2, Season 3 of *Fortnite: Battle Royale*, using the fame of Plaintiff's Trademarks to stay relevant to current players, and to incentivize those players to continue playing *Fortnite: Battle Royale*, impliedly representing that Plaintiff consented to Defendant's use of the Trademarks, intentionally causing the erroneous public association between *Fortnite: Battle Royale* and Plaintiff, and creating the false impression that Plaintiff has endorsed *Fortnite: Battle Royale*.

62.    By reason of Defendant's acts alleged herein, Plaintiff has suffered and will suffer damage to its business, reputation and goodwill.  Additionally, Plaintiff has suffered and will suffer the loss of sales and profits that it would have made but for Defendant's acts.

63.    Defendant's conduct constitutes willful trademark infringement pursuant to 15 U.S.C. § 1114(1).  Defendant's conduct was intended to cause confusion, has caused confusion, and will continue to cause confusion unless enjoined.

64.    For each completed act of trademark infringement, Plaintiff is entitled to recover its actual damages as well as Defendant's profits from such infringement.

37324261.1

65.     Defendant continues to do the acts complained of herein, and unless restrained and enjoined will continue to do so, all to Plaintiff's irreparable damage.  It would be difficult to ascertain the amount of compensation that could afford Plaintiff adequate relief for such continuing acts.  Plaintiff's remedy at law is not adequate to compensate it for the threatened injuries.  Monetary relief alone is not adequate to address fully the irreparable injury that Defendant's illegal actions have caused and will continue to cause Plaintiff if not enjoined.

**WHEREFORE**, Plaintiff CCI requests judgment against Defendant EGI for monetary damages, interest, attorneys' fees, costs, and such further relief as the Court deems proper.

## COUNT II

### [TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(C)]

66.     Plaintiff repeats and re-allege paragraphs 1-52 as if fully set forth herein.

67.     By virtue of the popularity and renown of Coral Castle, the Trademarks have become distinctive and famous within the meaning of 15 U.S.C. § 1125(c).

68.     Defendant's conduct dilutes the distinctive quality of the Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

69.     Defendant's conduct and actions have lessened the capacity of the Trademarks to function as indicators of source, constituting dilution by blurring.

70.     Defendant did not credit Plaintiff, or seek their consent, for the inclusion of the Location "Coral Castle" within *Fortnite: Battle Royale*.

71.     Defendant's acts have been deliberate, willful, intentional, and purposeful to exploit Plaintiff's rights in the Trademarks for their own personal gain.

72.     Defendant continues to advertise, promote, market, sell and offer for sale V-Bucks and Battle Passes for Chapter 2, Season 3 of *Fortnite: Battle Royale* including the

16

Location "Coral Castle," and unless restrained and enjoined, will continue to do so to Plaintiff's irreparable damage.

73.     Defendant's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be compensated or measured in money.  Plaintiff thus has no adequate remedy at law and is entitled to injunctive relief, prohibiting further dilution of the Trademarks.

74.     Because of the willful nature of Defendant's wrongful acts, Plaintiff is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

75.     Plaintiff is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

**WHEREFORE**, Plaintiff CCI requests judgment against Defendant EGI for monetary damages, interest, costs, and such further relief as the Court deems proper.

## COUNT III

### [Unfair Competition Under 15 U.S.C. § 1125(a)]

76.     Plaintiff repeats and re-alleges Paragraphs 1-52 as if fully set forth herein.

77.     Plaintiff is the owner of the '446 and '447 Registrations, as well as owner of all common law rights in and to the Trademarks.

78.     The Trademarks are inherently distinctive as used in connection with museum services and related retail services.

79.     Plaintiff has developed and maintained substantial secondary meaning in the Trademarks as used in connection with museum services and related retail services.

80.     Defendant, without Plaintiff's consent, has used reproductions, counterfeits, copies and/or colorable imitations of the Trademarks in commerce or in connection with the sale,

17

offering for sale, distribution and/or advertising of Defendant's goods and services, and such use is likely to cause confusion, to cause mistake, and/or to deceive.

81.     Defendant's use of the mark "Coral Castle" as a Location in *Fortnite: Battle Royale* is likely to cause confusion, mistake or to deceive the public as to the affiliation, connection or association of Defendant and its goods and services with Plaintiff.

82.     The likelihood of confusion is only exacerbated by the fact that *Fortnite: Battle Royale* and the real Coral Castle share common marketing and advertising themes, such as castles and nautical elements.  Specifically, due to these common themes, purchasers are more likely to believe that the "Coral Castle" Location in *Fortnite: Battle Royale* is authorized, approved and/or sponsored by Plaintiff.

83.     Defendant has used the Trademarks to generate significant income by selling, *inter alia*,  V-Bucks and Battle Passes for Chapter 2, Season 3 of *Fortnite: Battle Royale*, using the fame of Plaintiff's Trademarks to stay relevant to current players, and to incentivize those players to continue playing *Fortnite: Battle Royale*, impliedly representing that Plaintiff consented to Defendant's use of the Trademarks, intentionally causing the erroneous public association between *Fortnite: Battle Royale* and Plaintiff, and creating the false impression that Plaintiff has endorsed *Fortnite: Battle Royale*.

84.     By reason of Defendant's acts alleged herein, Plaintiff has suffered and will suffer damage to its business, reputation and goodwill.  Additionally, Plaintiff has suffered and will suffer the loss of sales and profits that it would have made but for Defendant's acts.

85.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business

reputation and goodwill.  Defendant will continue, unless restrained, to conduct its business using the infringing mark "Coral Castle," causing irreparable damage to Plaintiff.

86.      Defendant's conduct constitutes unfair competition pursuant to 15 U.S.C. § 1125(a).  Defendant's conduct was intended to cause confusion, has caused confusion, and will continue to cause confusion unless enjoined.

87.      Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendant and any of its officers, agents, servants, licensees, and employees, and all persons acting in concert with Defendant, from engaging in further acts of false designation of origin, affiliation or sponsorship.

88.      Plaintiff is further entitled to recover from Defendant the actual damages that it sustained and/or is likely to sustain as a result of Defendant's wrongful acts.  Plaintiff is unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to suffer by reason of Defendant's acts of false designation of origin, affiliation or endorsement.

89.      Plaintiffs remedy at law is not adequate to compensate it for the threatened injuries.  Monetary relief alone is not adequate to address fully the irreparable injury that Defendant's illegal actions have caused and will continue to cause Plaintiff if not enjoined.

90.      Plaintiff is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its wrongful acts. Plaintiff is unable to ascertain the extent of the gains, profits, and advantages that Defendant has realized by reason of its acts of false designation of origin, affiliation or endorsement.

91.      Because of the willful nature of Defendant's wrongful acts, Plaintiff is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

92.     Plaintiff is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

**WHEREFORE**, Plaintiff requests judgment against Defendant EGI for monetary damages, interest, costs, and such further relief as the Court deems proper.

### COUNT IV

### [UNFAIR COMPETITION UNDER FLORIDA COMMON LAW]

93.     Plaintiff repeats and re-alleges Paragraphs 1-52 as if fully set forth herein.

94.     Plaintiff owns and enjoys common law trademark rights in the Trademarks in the State of Florida, and throughout the United States.

95.     The Trademarks operate as indicators of source and/or origin, particularly when used in interstate commerce.   Moreover, the Trademarks have acquired distinctiveness via secondary meaning.

96.     Defendant, through their use, display and copying of the Trademarks, has without authorization, in connection with their goods and/or services in commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Defendant with Plaintiff, and/or as to the origin, sponsorship or approval of Defendant's goods and services in violation of the common law of the State of Florida.

97.     Consumers are likely to purchase video games and video game services from Defendant believing that Defendant is affiliated, connected or associated with Plaintiff, resulting in a loss of goodwill to Plaintiff.

98.     Defendant's acts as set forth herein constitute unfair competition, and/or induce or contribute to acts of unfair competition.

37324261.1

99.     Defendant's unfair acts have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

100.     As a direct and proximate result of Defendant's conduct, Plaintiff has been, and is likely to be, substantially injured in its business including harm to its goodwill and reputation and the loss of revenues and profits.

101.     Upon information and belief, Defendant's acts of unfair competition are, and have been, oppressive, fraudulent and malicious, thus entitling Plaintiff to punitive damages.

102.     Plaintiff has no adequate remedy at law because the Trademarks are unique and represent to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate Plaintiff for Defendant's misconduct.

103.     Unless enjoined by this Court, Defendant and those acting in concert with them will continue to infringe Plaintiff's intellectual property rights, to Plaintiff's irreparable injury. This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the Trademarks, and/or marks confusingly similar thereto, and to ameliorate and mitigate Plaintiff's injuries.

104.     Upon information and belief, Defendant has engaged in the above-referenced acts of unfair competition with knowledge of Plaintiff's exclusive intellectual property rights, and Defendant will continue in such acts unless enjoined by this Court.

**WHEREFORE**, Plaintiff CCI requests judgment against Defendant EGI for monetary damages, interest, costs, and such further relief as the Court deems proper.

37324261.1

## COUNT V

### [VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT]

105.    Plaintiff repeats and re-alleges Paragraphs 1-52 as if fully set forth herein.

106.    Defendant's use of the Trademarks, or colorable imitations thereof, are deceptive and unfair practices under Florida's Deceptive and Unfair Trade Practices Act (F.S.A. § 501.201 *et seq.*).

107.    Specifically, Defendant's use of the Trademarks, and attempt to profit from the sale of video games and video game services to third parties go against public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

108.    As a direct result of Defendant's deceptive and unfair practices, Plaintiff has been, and continues to be, damaged by Defendant's use of the Trademarks, and attempts to profit from the sale of the infringing products and services.

**WHEREFORE**, Plaintiff CCI requests judgment against Defendant EGI for monetary damages, interest, costs, and such further relief as the Court deems proper.

## COUNT VI

### [VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT]

109.    Plaintiff repeats and re-alleges Paragraphs 1-52 as if fully set forth herein.

110.    Plaintiff has invested substantial time, labor and money in the operation of the museum and tourist attraction called Coral Castle, and has accordingly developed substantial goodwill in connection with the Trademarks.

111.    Defendant has wrongfully misappropriated Plaintiff's goodwill, and has profited from and received certain other benefits as a result of such wrongful misappropriation.

112.    Defendant has been unjustly enriched at Plaintiff's expense.

113.    It would be inequitable to allow Defendant to retain the profits and other benefits it acquired through its wrongful actions.

**WHEREFORE**, Plaintiff CCI requests judgment against Defendant EGI for monetary damages, interest, costs, and such further relief as the Court deems proper.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, for the foregoing reasons, Plaintiff CCI respectfully requests that this Court enter preliminary and permanent injunctive relief against Defendant EGI, as well as its employee and/or agents, awarding the following relief:

A.    Entry of a judgment that:

1.    Defendant has infringed Plaintiff's federal trademark rights in the Trademarks by causing a likelihood of confusion;

2.    Defendant's sale of the goods and services including the Trademarks, constitutes dilution by blurring under Section 43(c) of the Lanham Act;

3.    Defendant's sale of the goods and services including the Trademarks, constitutes unfair competition under Section 43(a) of the Lanham Act;

4.    Defendant has engaged in common law unfair competition, through the sale of goods and services using including the Trademarks, and/or goods and services related thereto;

5.    Defendant has engaged in deceptive and unfair trade practices in the State of Florida (under the Deceptive and Unfair Trade Practices Act), through the sale of goods and services including the Trademarks, and/or goods and services related thereto;

6.    Defendant has been unjustly enriched by the sale of goods and services including the Trademarks, and/or goods and services related thereto.

37324261.1

B.     Entry of judgment that Defendant's acts of trademark infringement and unfair competition detailed herein have been, and continue to be, willful and deliberate.

C.     Entry of preliminarily and permanent injunctions enjoining Defendant, their agents, servants and employees, and those people in active concert or participation with it from:

1.     using, infringing, contributing to, or inducing infringement of the Trademarks;

2.     using any false designation, description or representation regarding the source or sponsorship of its goods and/or services, or stating or implying that Defendant or its agents are connected with the goods and/or services of Plaintiff, thereby damaging Plaintiff's goodwill and reputation;

3.     causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendant's business and/or Defendant's goods or services, including but not limited to causing a likelihood of confusion or misunderstanding as to Defendant's affiliation, connection or association with Plaintiff or any of Plaintiff's goods and/or services; and,

4.     otherwise infringing Plaintiff's common law and registered trademarks and service marks, or otherwise unfairly competing with Plaintiff.

D.     Entry of judgment requiring Defendant to offer up for destruction all articles, displays, advertisements, labels, signs, prints, packages, packaging, wrappers, receptacles, brochures, catalogs, plates, molds, uniforms, and logo items in its possession or control which display a product which is identical to, or confusingly similar with, Plaintiff's Trademarks, as provided by Section 36 of the Lanham Act (15 U.S.C. §1118).

E.     Entry of judgment requiring Defendant to file with the Court and to serve upon Plaintiff's counsel within thirty (30) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which it has complied with such injunction or order pursuant to Section 34 of the Lanham Act (15 U.S.C. §1116(a)).

F.     Entry of judgment:

1.     awarding Plaintiff such actual damages as it has sustained by reason of Defendant's acts of trademark infringement in violation of Section 32 of the Lanham Act (15

U.S.C. §1114) (including, but not limited to, a disgorgement of Defendant's profits, Plaintiff's lost profits, and the costs of this action);

2.      awarding Plaintiff treble its actual damages for such trademark infringement;

3.      awarding Plaintiff its attorney's fees in bringing and maintaining this action, which should be deemed exceptional, for such trademark infringement; and

4.      requiring Defendant to account to Plaintiff for any and all profits derived by it from sales of goods and services including the Trademarks, and to compensate Plaintiff for all damages sustained by reason of such trademark infringement and the other acts complained of herein; all pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

G.      Entry of judgment:

1.      awarding Plaintiff such actual damages as it has sustained by reason of Defendant's acts of dilution in violation of Section 43(c) of the Lanham Act (15 U.S.C. §1125(c)) (including, but not limited to, a disgorgement of Defendant's profits, Plaintiff's lost profits, and the costs of this action);

2.      awarding Plaintiff treble its actual damages or such acts of dilution;

3.      awarding Plaintiff its attorney's fees in bringing and maintaining this action, which should be deemed exceptional, for such acts of dilution; and

4.      requiring Defendant to account to Plaintiff for any and all profits derived by it from sales of goods and services including the Trademarks, and to compensate Plaintiff for all damages sustained by reason of such acts of dilution and the other acts complained of herein; all pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

H.      Entry of judgment:

1.      awarding Plaintiff such actual damages as it has sustained by reason of Defendant's acts of unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. §1125(a)(1)(A)) (including, but not limited to, a disgorgement of Defendant's profits, Plaintiff's lost profits, and the costs of this action);

2.      awarding Plaintiff treble its actual damages or such acts of unfair competition;

3.      awarding Plaintiff its attorney's fees in bringing and maintaining this action, which should be deemed exceptional, for such acts of unfair competition; and

4.      requiring Defendant to account to Plaintiff for any and all profits derived by it from sales of goods and services including the Trademarks, and to compensate Plaintiff for

all damages sustained by reason of such acts of unfair competition and the other acts complained of herein; all pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

I.      Entry of judgment ordering Defendant to compensate Plaintiff for the advertising or other expenses necessary to dispel any confusion caused by Defendant's trademark infringement, unfair competition and other unlawful acts (including but not limited to the costs of an appropriate corrective advertising campaign), pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

J.      Entry of judgment awarding Plaintiff such damages as it has sustained by reason of Defendant's acts of common law unfair competition, including but not limited to compensatory damages, attorneys' fees, costs and/or punitive damages.

K.      Entry of judgment awarding Plaintiff such damages as it has sustained by reason of Defendant's deceptive and unfair trade practices, including but not limited to compensatory damages, attorneys' fees, costs and/or punitive damages.

L.      Entry of judgment awarding Plaintiff the amount of Defendant's unjust enrichment.

M.      Affording Plaintiff such further and other relief as this Court may deem just and proper.

26

## **JURY DEMAND**

Plaintiff demands a jury for all issues triable to a jury.

Dated:  August 13, 2020

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**


*/s/ Steven M. Appelbaum*
Steven M. Appelbaum
Florida Bar No. 71399
701 Brickell Avenue, 17th Floor
Miami, Florida 33131
Telephone: (305) 428-4519
Email: steven.appelbaum@saul.com;
          mia-ctdocs@saul.com;
          Jessica.Barrero@saul.com

ATTORNEYS FOR PLAINTIFF

OF COUNSEL
Darius C. Gambino (PA 83496)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7173
Email: darius.gambino@saul.com