# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CORAL CASTLE, INC.,

                    Plaintiff,

      v.

EPIC GAMES, INC.,

                    Defendant.

CASE NO. 1:20-cv-23381-UU

## DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM F LAW

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF ALLEGED FACTS .................................................................... 3

MEMORANDUM OF LAW ...................................................................................... 6

    I.    THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS ............................ 8

    II.    NAMING A CORAL-ADORNED CASTLE THE "CORAL CASTLE" IS A PROTECTED DESCRIPTIVE FAIR USE ...................................................... 13

    III.    PLAINTIFF'S CLAIMS ALSO SUFFER FROM PLEADING FAILURES ......................................................................................................... 17

        A.    Plaintiff Does Not Allege Trademark Use By Epic Games...................... 18

        B.    Plaintiff's FDUTPA Claims Fail As Plaintiff Does Not Allege Actual Damages ................................................................................................ 18

CONCLUSION ........................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ADT LLC v. Alarm Prot. Tech. Fla., LLC*,
No. 12 Civ. 80898, 2013 WL 11276119 (S.D. Fla. Apr. 18, 2013).........................................20

*ADT LLC v. Vivint, Inc.*,
No. 17 Civ. 80432, 2017 WL 5640725 (S.D. Fla. Aug. 3, 2017).................................7, 19, 20

*Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*,
No. 18 Civ. 4903, 2019 WL 3802096 (S.D.N.Y. Aug. 13, 2019) ...........................................20

*Arnold v. ABC, Inc.*,
No. 06 Civ. 1747, 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007)...............................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................6

*BPI Sports, LLC v. Labdoor, Inc.*,
No. 15 Civ. 62212, 2016 WL 739652 (S.D. Fla. Feb. 25, 2016)............................................20

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) .......................................................................7, 9, 11, 13

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011)...................................................................................................................8

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*,
70 F.3d 267 (2d Cir. 1995)..............................................................................................15, 16

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*,
169 So. 3d 164 (Fla. 4th DCA 2015)......................................................................................19

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
125 F.3d 28 (2d Cir. 1997)..........................................................................................14, 15, 16

*Cummings v. Soul Train Holdings LLC*,
67 F. Supp. 3d 599 (S.D.N.Y. 2014).........................................................................................7

*Dessert Beauty, Inc. v. Fox*,
568 F. Supp. 2d 416 (S.D.N.Y. 2008).....................................................................................16

*Dillinger, LLC v. Elec. Arts Inc.*,
    No. 1:09 Civ. 1236, 2011 WL 2457678 (S.D. Ind. June 16, 2011) ........................9, 10, 11, 13

*Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*,
    No. 15 Civ. 81062, 2016 WL 4256916 (S.D. Fla. May 16, 2016) ..........................................20

*Dorestin v. Hollywood Imps., Inc.*,
    45 So. 3d 819 (Fla. 4th DCA 2010) ..............................................................................19

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    11 F.3d 1460 (9th Cir. 1993) ..............................................................................7, 16, 17

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ...................................................................... *passim*

*Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*,
    262 F. Supp. 2d 1334 (S.D. Fla. 1999) ..............................................................................19

*Five for Ent. S.A. v. Rodriguez*,
    877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012); ..........................................................................19

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) ..............................................................................7

*Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*,
    715 So. 2d 311 (Fla. 4th DCA 1998) ..............................................................................20

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
    921 F.3d 1343 (11th Cir. 2019) ..............................................................................15, 16

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) ..............................................................................7, 17

*Int'l Stamp Art, Inc. v. U.S. Postal Serv.*,
    456 F.3d 1270 (11th Cir. 2006) ..............................................................................2, 14, 16, 17

*Kassa v. Detroit Metro Convention & Visitors Bureau*,
    150 F. Supp. 3d 831 (E.D. Mich. 2015)..............................................................................15

*Kent v. Universal Studios, Inc.*,
    No. 08 Civ. 2704, 2008 WL 11338293 (C.D. Cal. Aug. 15, 2008)....................................10, 13

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004)..............................................................................2, 13, 14

*Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*,
    155 F. Supp. 3d 1310 (S.D. Fla. 2016) (Ungaro, J.) ..............................................................................6

*Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*,
   170 F. Supp. 3d 1249, 1270 (C.D. Cal 2016) ........................................................18

*Louis Vuitton Malletier v. Warner Bros. Ent. Inc.*,
   868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) ..........................................................10

*Metrano v. Twentieth Century Fox Film Corp.*,
   No. 08 Civ. 6314, 2009 WL 10672576 (C.D. Cal. July 16, 2009) ................................9, 10, 13

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
   74 F. Supp. 3d 1134 (N.D. Cal. 2014) ............................................................10, 12

*N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
   389 F. Supp. 2d 527 (S.D.N.Y. 2005), *aff'd*, 497 F.3d 109 (2d Cir. 2007) ............................13

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*,
   671 F.3d 526 (5th Cir. 2012) ....................................................................18

*Novalogic, Inc. v. Activision Blizzard*,
   41 F. Supp. 3d 885 (C.D. Cal. 2013) ..........................................................8, 10, 12

*Nyquist v. Randall*,
   819 F.2d 1014 (11th Cir. 1987) ..................................................................19

*Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*,
   184 F. Supp. 3d 572 (W.D. Ky. 2016) ........................................................7, 15, 16, 17

*Orkin Exterminating Co. v. DelGuidice*,
   790 So. 2d 1158 (Fla. 5th DCA 2001) ..............................................................20

*Outhouse PR, LLC v. Northstar Travel Media, LLC¸*
   No. 19 Civ. 5979, 2020 WL 2512092 (S.D.N.Y. May 15, 2020) ..........................7, 14, 15, 17

*Pellegrino v. Epic Games, Inc.*,
   No. 19 Civ. 1806, 2020 WL 1531867 (E.D. Pa. Mar. 31, 2020) ...............................18

*Rebellion Devs. Ltd. v. Stardock Ent., Inc.*,
   No. 12 Civ. 12805, 2013 WL 1944888, at *4 (E.D. Mich. May 9, 2013) .............7, 10, 11, 13

*Rodriguez v. Recovery Performance & Marine, LLC*,
   38 So. 3d 178 (Fla. 3d DCA 2010) ..............................................................19, 20

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)........................................................................8

*Rollins, Inc. v. Heller*,
   454 So. 2d 580 (Fla. 3d DCA 1984) ..............................................................20

*Roxbury Ent. v. Penthouse Media Grp., Inc.*,
   669 F. Supp. 2d 1170, 1173, 1176 (C.D. Cal. 2009) ( ...............................................9

*Se. Clinical Nutrition Ctrs., Inc. v. Mayo Found. for Med. Educ. & Rsch.*,
   135 F. Supp. 3d 1267 (N.D. Ga. 2013) ...............................................14, 15, 16, 17

*Smith v. 2001 S. Dixie Highway, Inc.*,
   872 So. 2d 992 (Fla. 4th DCA 2004) ...........................................................20

*SportFuel, Inc. v. PepsiCo, Inc.*,
   932 F.3d 589 (7th Cir. 2019) ...................................................................16

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*,
   64 F.3d 1055 (7th Cir. 1995) ...................................................................16

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y. 2008), *aff'd*, 600 F.3d 93 (2d Cir. 2010) ...............18

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*,
   683 F.3d 1266 (11th Cir. 2012) .......................................................1, 8, 11

*Urling v. Helms Exterminators, Inc.*,
   468 So. 2d 451 (Fla. 1st DCA 1985) ..........................................................20

*Valencia v. Universal City Studios LLC*,
   No. 1:14 Civ. 528, 2014 WL 7240526 (N.D. Ga. Dec. 18, 2014) ...............10, 12, 13

*Vallejo v. Narcos Prods., LLC*,
   No. 18 Civ. 23462, 2019 WL 5884513 (S.D. Fla. May 24, 2019) .............7, 10, 12, 13

*VIRAG, S.R.L. v. Sony Comput. Ent. Am. LLC*,
   699 F. App'x 667, 668 (9th Cir. 2017), ...................................8, 9, 12, 13

**Statutes**

15 U.S.C. § 1115...........................................................................13

15 U.S.C. § 1125...........................................................................13

§ 501.211(2), Fla. Stat....................................................................19

Lanham Act...................................................................1, 7, 8, 11

**Rules**

Fed. R. Civ. P. 12 ................................................................. *passim*

**Other Authorities**

McCarthy on Trademarks and Unfair Competition § 24:122 (5th ed.) .........................................18

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Epic Games, Inc. ("Epic Games" or "Defendant"), hereby submits this motion to dismiss the Complaint (D.E. 1) filed by Plaintiff Coral Castle, Inc. ("Coral Castle" or "Plaintiff"), and in support hereof states:

## PRELIMINARY STATEMENT

Through its Complaint, Plaintiff seeks to use its limited trademark rights to monopolize use of the descriptive phrase "Coral Castle" and prevent its use in a fictional work to describe a castle adorned with coral. Although Plaintiff asserts ownership of a CORAL CASTLE trademark, that mark is registered for only museum and online-retail services related to a one-story, limestone structure located in Florida. Nevertheless, Plaintiff is attempting to leverage those narrow rights to prevent Epic Games from calling a multi-story castle adorned with coral "Coral Castle" in a flooded world, ocean-themed Season of its world-famous fictional video game *Fortnite*. Plaintiff's claims should be dismissed for multiple reasons.

***First***, the Complaint should be dismissed because Plaintiff's claims are barred by the First Amendment. In *University of Alabama Board of Trustees v. New Life Art, Inc.*, the Eleventh Circuit held that the use of a trademark in an expressive work does not violate the Lanham Act unless (1) "the use of the mark has no artistic relevance to the underlying work whatsoever," or (2) "it explicitly misleads as to the source or the content of the work." 683 F.3d 1266, 1278 (11th Cir. 2012). Here, there is no question that video games, like *Fortnite*, are expressive works, particularly as *Fortnite*, which is incorporated by reference, takes place in a massive, fictional world where players encounter elements of a long-term, evolving narrative. As to the first prong, "artistic relevance," all that is required is relevance that is "above zero," which is easily established here as the "Coral Castle" name is but one of a number of alliterative names for elements of the *Fortnite* storyline that begin with the word "Coral." The "Coral

- 1 -

Castle" name followed that existing naming convention to evoke nautical themes in the game's flooded world narrative to describe a relevant story element: a castle adorned with coral.  As to the second prong, far from being "explicitly misleading," Epic Games has made clear it is the source of *Fortnite* through its repeated and prominent use of its EPIC GAMES and FORTNITE trademarks and logos on its game box disc, and installation screens, and throughout every stage of playing the game.  The Complaint does not allege any overt statement to the contrary.  Indeed, the fact that the "Coral Castle" location is only one of many locations, deep within the game, in the context of a story about a flooded world underscores that Epic Games has not attempted to suggest a relationship with Plaintiff.  Thus, the Complaint should be dismissed for this reason alone.

  ***Second***, in *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, the Supreme Court made clear that one cannot monopolize descriptive terms and that it is not trademark infringement to use them in their ordinary, descriptive sense.  543 U.S. 111, 122 (2004).  Consequently, descriptive fair use is expressly permitted by the Lanham Act, 15 U.S.C. §§ 1115(b)(4), 1125(c)(3)(A), and is established in this Circuit by three factors: use "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith," *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006).  Here, Epic Games' use of the name "Coral Castle" is a descriptive fair use based on the Complaint's allegations and the *Fortnite* game itself.  As to the first factor, use "other than as a mark," Epic Games makes clear that it is the source of *Fortnite*.  As to the second factor, use "in a descriptive sense," the "Coral Castle" name is used in the game to describe a castle adorned with coral as part of a storyline that is ocean-themed. Moreover, the use is consistent with other alliterative location names in *Fortnite*—such as "Sweaty Sands," "Dirty Docks," and "Misty Meadows"—as well as other names that begin with

the word "Coral"—such as "Coral Cove," "Coral Cruiser," "Coral Chorus," "Coral Cowl," and "Coral Commandos"—all of which describe characteristics of the *Fortnite* video game and its flooded world storyline.  As to the third factor, use "in good faith," Epic Games' repeated use of its own trademarks and descriptive use of the "Coral Castle" name evidence its good faith as a matter of law.  Good faith also is clear from the differences between Plaintiff's museum—a one-story tourist attraction where members of the public come to view monotone slabs of limestone—and Epic Games' location—an actual, multi-story castle on an island in the middle of the ocean with brightly-colored coral adorning it.  Epic Games' location is not a museum, does not look like Plaintiff's museum, and does not use Plaintiff's logo.  Thus, the Complaint should be dismissed on the basis of fair use as well.

    ***Finally***, the Complaint also suffers from two fundamental pleading failures.  As to Plaintiff's dilution claim (Count II), Plaintiff has not alleged that Epic Games used the "Coral Castle" name as a trademark for Epic Games' goods or services, which is a required element of a dilution claim.  As to Plaintiff's Florida Deceptive and Unfair Trade Practices ("FDUTPA") claims (Counts V and VI), Plaintiff has not alleged "actual damages" as required by the statute.  Instead, it has alleged lost sales, which is a classic form of consequential damages, not actual damages under FDUTPA.  Thus, Plaintiff's allegations are not sufficient to state a claim.

    For these reasons, Epic Games respectfully requests that the Court grant its motion and dismiss Plaintiff's Complaint in its entirety.  Moreover, as amendment would be futile, Epic Games requests that the Court dismiss the Complaint with prejudice.

## STATEMENT OF ALLEGED FACTS

    Plaintiff alleges that it owns a "structure" that "comprises numerous megalithic stones, mostly limestone formed from coral" (the "Structure").  Compl. ¶¶ 12, 15.  The Structure is "a

privately-operated tourist attraction," originally named "Rock Gate" and then renamed "Coral Castle." *Id.* ¶¶ 14–15.  As depicted in the Complaint, rather than being an actual castle, Plaintiff's structure consists of various monotone rock formations close to the ground that patrons walk around:



*Id.* ¶ 17.  Plaintiff does not hold any trademark registrations for video games.  Instead, Plaintiff asserts in this case two federal trademark registrations for different services (the "Marks"):

- One is for a CORAL CASTLE mark for "museum services" and for "on-line retail store services featuring hats, shirts, books, DVDs, replicas of museum attractions, collectible spoons, thimbles, lapel pins, tie tacks, mints, Christmas ornaments, souvenir patches, shot glasses, bumper stickers, toys, mugs, plates, cups, souvenir tins sold empty, magnets." *Id.* Ex. A, at 2.

- The other registration is not for the words "Coral Castle," but for the design shown to the right for "museum services." *Id.* at 4.  It reads CORAL CASTLE MUSEUM EST. 1923 ~ MIAMI, FL. 

Plaintiff alleges that Epic Games has used Plaintiff's registered and common law

trademarks in its *Fortnite* video game.  Compl. ¶ 58.  In *Fortnite's* Battle Royale mode, up to 100 players, alone, in pairs, or groups, compete to be the last player or group alive on "a virtual island."  *Id.* ¶ 26.  The game features an extensive world in which players explore, build, and destroy, as well as battle against each other via player-to-player combat.  *See* Exhibit 1, Declaration of Joshua L. Simmons, dated October 9, 2020 ("Simmons Decl.") Ex. A (copy of *Fortnite* video game).

After *Fortnite's* release in 2017, Epic Games continued to make new content available as part of different "Chapters" and "Seasons."  Compl. ¶ 36.  They include an overarching narrative that engages the players, furthers the overarching storyline, and introduces new characters, locations, and features.  Simmons Decl. Ex. A.  At the end of Chapter 2, Season 2, a disaster causes a wall of water to come crashing across the island on which the game is set.  As a result, Chapter 2, Season 3 of *Fortnite* involves a flooded map and is ocean-themed, including elements such as sharks, whirlpools, and a playable character outfit based on DC Comics' Aquaman character.  Compl. ¶¶ 38, 49.

In *Fortnite*, players may visit different parts of the island, which have fanciful, thematic, and often alliterative names.  As a result, Chapter 2, Season 3's locations included "Sweaty Sands" for a beach town with sand, "Dirty Docks" for docks with dirty factories, and "Misty Meadows" for a town in a large meadow.  *Id.* ¶¶ 39–40; Simmons Decl. Ex. A.  It also included a number of locations and items with alliterative names that begin with the word "Coral," such as "Coral Cove" for a cove in the ocean, "Coral Cruiser" for a glider made of coral, "Coral Chorus" for a music reward, "Coral Cowl" for a coral-themed outfit, and "Coral Commandos" for coral-themed fighters.  Simmons Decl. ¶¶ 7–8.

In addition to these alliterative, ocean-themed locations and other names that begin with

the word "Coral," Epic Games named a castle location in the flooded world the "Coral Castle" (the "Location").  Compl. ¶ 5.  As shown below, unlike Plaintiff's Structure, the Coral Castle in *Fortnite* is an actual, multi-level castle adorned with coral, located on an island in the middle of the ocean, into which *Fortnite* players can enter and explore:



Simmons Decl. ¶ 9.  Indeed, Plaintiff alleges that it appears in a "beach area, including islands, sandbars, and water features."  Compl. ¶ 44.  Plaintiff claims that the Location—which was not included in *Fortnite* until Chapter 2, Season 3 in August 2020—infringes the Marks.  *Id.* ¶ 52.

## MEMORANDUM OF LAW

To survive a Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft,* 556 U.S. at 678.  As

this Court has held, "[c]onclusory allegations will not suffice to state a claim," and "a court may dismiss a complaint on a dispositive issue of law." *Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1315 (S.D. Fla. 2016) (Ungaro, J.). Moreover, on a Rule 12(b)(6) motion, "a district court may consider a document attached to a motion to dismiss if it is (1) central to the party's claim, and (2) its authenticity is not challenged." *Id.* Accordingly, this Court may consider the copy of *Fortnite* attached as an exhibit to the Simmons Declaration as Plaintiff's claims are based on the use of the name "Coral Castle" for the Location in *Fortnite*, and there can be no issue as to the authenticity of the game.

As all that is necessary to grant Epic Games' motion is before the Court, dismissal is appropriate. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (affirming grant of motion to dismiss trademark claims on *Rogers* grounds); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) (affirming grant of motion to dismiss trademark claim based on descriptive use); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir. 1993) (same); *Outhouse PR, LLC v. Northstar Travel Media, LLC¸* No. 19 Civ. 5979, 2020 WL 2512092, at *6 (S.D.N.Y. May 15, 2020) (granting motion to dismiss trademark claims based on descriptive use); *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 184 F. Supp. 3d 572, 578–80 (W.D. Ky. 2016) (same); *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 606–07 (S.D.N.Y. 2014) (granting motion to dismiss trademark claims on *Rogers* grounds); *Rebellion Devs. Ltd. v. Stardock Ent., Inc.*, No. 12 Civ. 12805, 2013 WL 1944888, at *4 (E.D. Mich. May 9, 2013) (same).[1]

---

[1]   Moreover, as "common law unfair competition is evaluated using the same legal standard as the . . . Lanham Act," Plaintiff's claims under Florida law fall with Plaintiff's federal claims. *Vallejo v. Narcos Prods., LLC*, No. 18 Civ. 23462, 2019 WL 5884513, at *5 (S.D. Fla. May 24, 2019) (dismissing federal and state claims under *Rogers*); *ADT LLC v. Vivint, Inc*., No. 17 Civ. 80432, 2017 WL 5640725, at *4 (S.D. Fla. Aug. 3, 2017) ("Trademark infringement

## I.      THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS

Epic Games' use of the name "Coral Castle" is protected by the First Amendment, which permits expressive works, like *Fortnite*,[2] to use trademarks as part of their artistic message.  To assess First Amendment protection in this context, the Eleventh Circuit has held that courts "should construe the Lanham Act narrowly" and "weigh the public interest in free expression against the public interest in avoiding consumer confusion."  *Univ. of Ala.*, 683 F.3d at 1278.  To do so, they use the approach adopted by the Second Circuit in *Rogers v. Grimaldi*, *id.* (citing 875 F.2d 994, 999 (2d Cir. 1989)), which "is relatively straightforward to apply, and is very protective of speech."  *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013).  The approach, which applies to "the use of a trademark in the body of the work," *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008), holds that an "artistically expressive use of a trademark will not violate the Lanham Act" unless (1) "the use of the mark has no artistic relevance to the underlying work whatsoever," or (2) "it explicitly misleads as to the source or the content of the work."  *Univ. of Ala.*, 683 F.3d at 1278 (quoting *E.S.S.*, 547 F.3d at 1099).  Moreover, it "applies regardless whether the [plaintiff's] trademark has independent cultural significance . . . or [the defendant's] use of the trademark within the video game serves to communicate a message other than the source of the trademark."  *VIRAG, S.R.L. v. Sony Comput. Ent. Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017), *aff'g*, No. 3:15 Civ. 1729, 2015 WL 5000102 (N.D. Cal. Aug. 21, 2015).[3]  The test applies to both federal and

---

is one type of underlying act upon which an unfair competition claim may be based, . . . and in such a case, the common law unfair competition claim 'rise[s] or fall[s] with its federal trademark infringement . . . claim.'" (quoting *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016))).

[2]     The Supreme Court has held that "video games qualify for First Amendment protection." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011).

[3]     "In fact, as long as some artistic relevance exists, even a defendant's intent to use the

state unfair competition and trademark claims.  *See E.S.S.*, 547 F.3d at 1099, 1101.

**As to the first prong**, artistic relevance is a "*de minimis* requirement," *Metrano v. Twentieth Century Fox Film Corp.*, No. 08 Civ. 6314, 2009 WL 10672576, at *5 (C.D. Cal. July 16, 2009), that the relevance be "above zero."  *VIRAG*, 699 F. App'x at 668.  Thus, "only the use of a trademark with *no* artistic relevance to the underlying work *whatsoever* does not merit First Amendment protection."  *E.S.S.*, 547 F.3d at 1100 (internal quotation marks omitted; emphasis in original).  A video game is not required to be "about" the mark to qualify, *id.*, nor does First Amendment protection evaporate because the relevance is "attenuated."  *Dillinger, LLC v. Elec. Arts Inc.*, No. 1:09 Civ. 1236, 2011 WL 2457678, at *5 (S.D. Ind. June 16, 2011).  "This black-and-white rule has the benefit of limiting [courts'] need to engage in artistic analysis in this context."  *Brown*, 724 F.3d at 1243; *Dillinger,* 2011 WL 2457678, at *6 ("[I]t is not the role of the Court to determine how meaningful the relationship between a trademark and the content of a literary work must be . . . any connection whatsoever is enough.").

Here, naming the Location "Coral Castle" was artistically relevant because it (a) follows the naming convention of other locations and items in Season 3's flooded world, ocean-themed map, and (b) was used to describe a castle with brightly-colored coral adornments.  *See supra* 5.  Moreover, taking Plaintiff's allegations in the Complaint as true for the purposes of this motion only further establishes artistic relevance as Plaintiff asserts that Epic Games' depiction of the Location is an allusion to the Structure, making use of the name relevant under Plaintiff's own theory of the case.  Compl. ¶ 46 ("Both include nautical/beach motifs, castle structures, partial castle walls, and stone objects" and "evoke the feeling of a centuries old mysterious place.").

This is more than sufficient to qualify for First Amendment protection given that even a

---

trademark for promotional purposes does not forfeit First Amendment protection or trump artistic relevance."  *Novalogic*, 41 F. Supp. 3d at 900 n.17.

"tenuous" association satisfies the first prong.  *See Roxbury Ent. v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170, 1173, 1176 (C.D. Cal. 2009) (artistically relevant to use ROUTE 66 mark in an adult film because the film's story line, "to the extent there is one" concerned a young couple on the run); *see Vallejo*, 2019 WL 5884513, at \*4 (artistically relevant to use character allegedly based on plaintiff); *Valencia v. Universal City Studios LLC*, No. 1:14 Civ. 528, 2014 WL 7240526, at \*8 (N.D. Ga. Dec. 18, 2014) (artistically relevant to name films *Honey* and *Honey 2* as first film's protagonist was named "Honey Daniels" and second film's protagonist "drew inspiration" from her).[4]  Indeed, courts routinely find video games' use of trademarks to be artistically relevant.  *See E.S.S.*, 547 F.3d at 1100 (artistically relevant for video game to include strip club with similar name to plaintiff's trademark given goal of creating a parody of East Los Angeles); *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1142 (N.D. Cal. 2014) (artistically relevant to include plaintiff's "angry monkey" patch in video game as it offered "players a feeling of personal identity and authenticity during game play"); *Novalogic*, 41 F. Supp. 3d at 900–01 (artistically relevant where use added "to the enjoyment users receive from playing the complicated game"); *Rebellion*, 2013 WL 1944888, at \*5 (artistically relevant for video game to use REBELLION trademark as "players may choose to align with 'loyalist' or 'rebel' factions in the context of a civil war"); *Dillinger*, 2011 WL 2457678, at \*5 (artistically relevant to use DILLINGER trademark as it "is closely associated with the Tommy Gun," and Tommy Guns are used in the defendant's "virtual world").

---

[4]   *See also Louis Vuitton Malletier v. Warner Bros. Ent. Inc.,* 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (artistically relevant to use fake Louis Vuitton bag in a comedy film as one of the characters' mispronunciation of "Louis Vuitton" "comes across as funny"); *Metrano*, 2009 WL 10672576, at \*1, 5 (artistically relevant to use comedy routine that "pokes fun at magic acts" for "joke" about people who believe in "Jesus's ability to work miracles"); *Kent v. Universal Studios, Inc.*, No. 08 Civ. 2704, 2008 WL 11338293, at \*3 (C.D. Cal. Aug. 15, 2008) (artistically relevant to use video as "it aids in furthering the film's narrative").

**As to the second prong**, a work can be subject to unfair competition or trademark claims only "if the creator uses the mark or material to explicitly mislead consumers as to the source or the content of the work." *Brown*, 724 F.3d at 1245 (requiring "explicit indication," "overt claim," or "explicit misstatement"; internal quotation marks and alterations omitted). The "mere use of a trademark alone cannot suffice to make such use explicitly misleading." *E.S.S.*, 547 F.3d at 1100; *Dillinger*, 2011 WL 2457678, at *6 ("To be 'explicitly misleading,' the defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of plaintiff's name or other characteristic."). In fact, the Eleventh Circuit has held that, "[e]ven if some members of the public would draw the incorrect inference that [the plaintiff] had some involvement with [the defendant's works] that risk of misunderstanding, not engendered by an overt . . . claim . . . is so outweighed by the interest in artistic expression as to preclude any violation of the Lanham Act." *Univ. of Ala.*, 683 F.3d at 1279 (alterations and internal quotation marks omitted).[5]

Here, Epic Games has not been explicitly misleading for three reasons. **First**, far from being misleading, Epic Games has made clear that it is the source of *Fortnite*. It is clear from the *Fortnite* game cover (see right) and disc that Epic Games is the source of *Fortnite* as it prominently displays Epic Games' FORTNITE and EPIC GAMES trademarks and logos. Simmons Decl. Ex. A. Moreover, at every stage of installing and playing *Fortnite*, users are repeatedly presented with these marks. *Id.* ¶¶ 3–6. By contrast, the



---

[5]   *See also Rebellion*, 2013 WL 1944888, at *6 (granting motion to dismiss despite the plaintiff's argument that the defendants had used its trademark for their video game to "willfully attempt[] to capitalize on the [plaintiff's] reputation" as no "overt misrepresentation" was alleged in the complaint).

name "Coral Castle" appears only in relation to the Location, deep within the game, and in the context of many other locations.  As shown in the Complaint and reproduced below, the name appears as a location on the *Fortnite* map (in yellow below), alongside all of the other locations, such as Sweaty Sands, Misty Meadows, and Dirty Docks (in orange below).  Compl. ¶¶ 39, 45. Given Epic Games' prominent and repeated use of its own trademarks to designate the source of *Fortnite*, this element is established.  *Mil-Spec*, 74 F. Supp. 3d at 1144 (not explicitly misleading as video game's "packaging is very clear as to its origin and source, prominently bearing the title . . . identifying its creator . . . and boasting to be 'the best selling first person action franchise of all time'"); *Novalogic*, 41 F. Supp. 3d at 901–02 (same).




***Second***, Plaintiff identifies no misleading conduct by Epic Games other than use of the Marks, which does not establish misleading statements.  *See VIRAG*, 699 F. App'x at 668 (affirming grant of motion to dismiss as plaintiff "does not allege any 'explicit indication, overt claim, or explicit misstatement' that would cause consumer confusion"); *Vallejo*, 2019 WL 5884513, at *4 (granting motion to dismiss where "Plaintiff does not allege that Defendants were explicitly misleading about the source or content of" their film); *Valencia*, 2014 WL 7240526, at *8

(same).  **Third**, the Location is only one of many elements of *Fortnite*, *see supra* 5, including numerous other alliterative, ocean-themed location names and other names that begin with the word "Coral."  *See supra* 5.  This further militates against finding that Epic Games has made explicitly misleading statements.  *See E.S.S.*, 547 F.3d at 1100 (not explicitly misleading to include plaintiff's mark as it was "quite incidental to the overall story of the Game"); *Dillinger*, 2011 WL 2457678, at *8 (not explicitly misleading to use plaintiff's trademark "to identify one of many weapons within a visually complex video game comprised of countless artistic elements"); *Metrano*, 2009 WL 10672576, at *5 (not explicitly misleading to use routine as an incidental part of television program).  As *Fortnite* is protected by the First Amendment, dismissal is appropriate.  *See VIRAG*, 699 F. App'x at 668 (affirming grant of motion to dismiss); *Brown*, 724 F.3d at 1247–48 (same); *Vallejo*, 2019 WL 5884513, at *4–5 (granting Rule 12(b)(6) motion to dismiss); *Valencia*, 2014 WL 7240526, at *8 (same); *Rebellion*, 2013 WL 1944888, at *6 (same); *Metrano*, 2009 WL 10672576, at *5 (same); *Kent*, 2008 WL 11338293, at *3 (same).

## II.  NAMING A CORAL-ADORNED CASTLE THE "CORAL CASTLE" IS A PROTECTED DESCRIPTIVE FAIR USE

In addition to Plaintiff's claims being barred by the First Amendment, the Lanham Act was not designed "to deprive commercial speakers of the ordinary utility of descriptive words," *KP Permanent*, 543 U.S. at 122, which is why it made clear that descriptive fair use of a trademark is not infringement.  15 U.S.C. §§ 1115(b)(4) (fair use is not infringement), 1125(c)(3)(A) (fair use is not dilution); *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 389 F. Supp. 2d 527, 545 (S.D.N.Y. 2005) (unfair competition is "subject to a defense of 'fair use'"), *aff'd*, 497 F.3d 109 (2d Cir. 2007).  The Eleventh Circuit has stated that, "in

essence," descriptive fair use is a recognition that a trademark owner is forbidden "to appropriate a descriptive term for its exclusive use and so prevent others from accurately describing a characteristic of their goods." *Int'l Stamp*, 456 F.3d at 1274 (alteration omitted).  In raising a fair use defense, "the defendant has no independent burden to negate the likelihood of any confusion." *KP Permanent*, 543 U.S. at 124.  That is because "some possibility of consumer confusion must be compatible with fair use," and "[i]f any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *Id.* at 121–22.

A descriptive fair use exists where the defendant's use is "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Int'l Stamp*, 456 F.3d at 1274.  Here, each of those elements is established as a matter of law.

***First***, as to use other than as a mark, the "relevant question is whether the use of the phrase is meant to identify the source of the product." *Southeast Clinical Nutrition Ctrs., Inc. v. Mayo Found. for Med. Educ. & Rsch.*, 135 F. Supp. 3d 1267, 1276 (N.D. Ga. 2013).  If the alleged infringer "clearly indicat[es] the actual source of its products," such as through the "prominent display of its own trademarks," the first element is established. *Id.* at 1276–77; *see also Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997).  For example, in *Southeast*, although the plaintiff's mark appeared as "subchapters within the [defendant's] publications," the use was not as a trademark as the defendant used its own name "up front, on the faces of [its] book covers," and its logo "near the top of the bindings." 135 F. Supp. 3d at 1277.  Similarly, in *Outhouse*, although the defendant used the plaintiff's mark as the title of articles, such use was not as a trademark given that the articles appeared on the defendant's website, "which displayed a sizable and conspicuous . . . masthead," which was a

"clear identification of the articles' source."  2020 WL 2512092, at *5.

Here, just as the *Southeast* books and *Outhouse* website indicated their source on their cover or masthead, it is clear from Epic Games' repeated and prominent display of its EPIC GAMES and FORTNITE trademarks and logos on the *Fortnite* game cover and disc, as well as installation screens and other parts of the game, that Epic Games is the source of *Fortnite*.  *See supra* 11.  Given Epic Games' prominent and repeated use of its own trademarks to designate the source of *Fortnite*, this element is established.

*Second*, as to use in a descriptive sense, a mark is used descriptively when it "identifies a characteristic or quality of an article or service as, for example, its color, odor, function, dimensions, or ingredients."  *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1363 (11th Cir. 2019).  Courts also have found descriptive use when a mark is used to indicate a location.  *See Oaklawn*, 184 F. Supp. 3d at 578 (use of plaintiff's racetrack name in digital gambling system that allowed users to bet on "historical horse racing" was descriptive); *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 829–40 (E.D. Mich. 2015) (use of the phrase "Welcome to the D . . . as a greeting to the City of Detroit" was descriptive). Descriptive use "has not been narrowly confined to words that describe a characteristic of the goods, such as size or quality"; instead, it "permits use of words or images that are used . . . in their 'descriptive sense.'"  *Cosmetically Sealed*, 125 F.3d at 30 (quoting *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995)).  Thus, the descriptive term need not "depict the product itself, but only . . . refer to a <u>characteristic</u> of the product."  *Hard Candy*, 921 F.3d at 1363 (alterations omitted; emphasis in original).  For example, in *Hard Candy* the term "Hard Candy" was "used to describe the sheen of the makeup shade that the term labeled."  *Id.* at

- 15 -

1364.[6]

Here, the name "Coral Castle" is descriptive of the Location, which is a castle adorned with brightly-colored, flowing coral, on an island in the middle of the ocean, in an ocean-themed game set in a flooded world.  *See supra* 6.  As a result, Epic Games was entitled to call the Location "Coral Castle."  Further, it was not required to avoid the Marks by choosing a different name as "[c]ourts have uniformly rejected 'almost as good' alternatives regarding descriptive use."  *Oaklawn*, 184 F. Supp. 3d at 578–79 ("[T]he difference between the almost-right word and the right word is really a large matter—it's the difference between the 'lightning-bug' and the 'lightning.'").

***Third***, as to use in good faith, the standard is "whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services," and thereby "benefit from the good will associated with the holder of the mark."  *Int'l Stamp*, 456 F.3d at 1271, 1274.  Good faith is shown where "the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks."  *Id.* at 1275 (quoting *Cosmetically Sealed*, 125 F.3d at 30).  By contrast, knowledge of the plaintiff's mark "is insufficient" to show bad faith.  *Id.* at 1276; *Southeast*, 135 F. Supp. 3d at 1278.  For example, the Eleventh Circuit held in *International Stamp* that, despite the Postal Service's knowledge of the plaintiff's mark, its use of its "familiar Eagle trademark on the backs of its

---

[6]  *See also SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 602 (7th Cir. 2019) ("Sports Fuel" descriptive of sports drink); *Cosmetically Sealed*, 125 F.3d at 30 ("Seal it with a Kiss" used descriptively with lipstick); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1058–59 (7th Cir. 1995) ("sweet-tart" descriptive of cranberry juice); *Car-Freshner*, 70 F.3d at 270 (tree shape and pine scent descriptive of air fresheners); *Dual-Deck*, 11 F.3d at 1466–67 ("VCR-2" descriptive as used on videocassette recorders); *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 425 (S.D.N.Y. 2008) ("love potion" descriptive of fragrance products); *Arnold v. ABC, Inc.*, No. 06 Civ. 1747, 2007 WL 210330, at *2 (S.D.N.Y. Jan. 29, 2007) ("What's Your Problem?" used descriptively in advertising for legal television program).

stamp art products" showed good faith.  456 F.3d at 1275.  Similarly, in *Southeast*, the defendant's "prominent displays of its own . . . name and logo . . . demonstrate[d] a lack of intent to capitalize on the good will."  135 F. Supp. 3d at 1279.  Moreover, good faith can be found as a matter of law on a motion to dismiss.  *Outhouse*, 2020 WL 2512092, at \*7 (granting motion to dismiss; good faith as defendant used mark descriptively "accompanied by a conspicuous . . . masthead").

Here, as discussed above, Epic Games prominently and repeatedly uses its own trademarks to indicate the source of *Fortnite* is Epic Games, *see supra* 11, and it uses the name "Coral Castle" descriptively to describe a coral-adorned castle in its ocean-themed Season, *see supra* 16.  Moreover, good faith is evidenced by the fact that the "Coral Castle" name is just another ocean-themed, alliterative location name, as well as just one of many names that begin with "Coral."  *See supra* 5.  There also is nothing about Epic Games' Location that resembles the Structure, or Plaintiff's Marks—the Location is a brightly-colored, multi-level castle adorned with coral, not a monotone, one-story rock garden.  *See supra* 6.  There simply is no indication that the Location was intended to reference the Structure or Plaintiff's Marks.  Thus, Epic Games has used the "Coral Castle" name in good faith as a matter of law, and Plaintiff's claims should be dismissed for this independent reason.  *See Hensley*, 579 F.3d at 612 (affirming grant of motion to dismiss); *Dual-Deck*, 11 F.3d at 1467 (same); *Outhouse*, 2020 WL 2512092, at \*6–7 (granting Rule 12(b)(6) motion to dismiss); *Oaklawn*, 184 F. Supp. 3d at 578–80 (same).

## III.    PLAINTIFF'S CLAIMS ALSO SUFFER FROM PLEADING FAILURES

Although the Court need not consider Plaintiff's claims individually if it finds that Epic Games' use is fair use or protected by the First Amendment, Plaintiff also has failed to plead properly its dilution (Count II) and FDUTPA (Counts V and VI) claims.  Each is discussed in

turn below.

### A.    Plaintiff Does Not Allege Trademark Use By Epic Games

Plaintiff has not and cannot allege that Epic Games has used the name "Coral Castle" as a mark to identify the source of Epic Games' own goods or services—that is, to identify the source of *Fortnite*.  This also dooms Plaintiff's dilution claim.

In a closely analogous case, the Eastern District of Pennsylvania dismissed a dilution claim based on Epic Games' alleged use of a dance step.  The court explained that an element of a dilution claim is "that the defendant used the plaintiff's mark as its own mark to identify its own goods or services."  *Pellegrino v. Epic Games, Inc.*, No. 19 Civ. 1806, 2020 WL 1531867, at *10 (E.D. Pa. Mar. 31, 2020) (citing 4 McCarthy on Trademarks and Unfair Competition § 24:122 (5th ed.) ("The [federal dilution] statute makes it clear that a nontrademark and nontrade name use of the accused designation cannot dilute."), and *Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249, 1270 (C.D. Cal 2016) (granting motion to dismiss dilution claim as defendant was not alleged to use "the allegedly famous mark as Defendants' own mark or to identify Defendants' services")).[7]  Because the plaintiff did not allege such use, the claim was dismissed.  *Pellegrino*, 2020 WL 1531867, at *10.  Similarly, here, Plaintiff does not allege that Epic Games is using the "Coral Castle" name as a trademark for Epic Games' goods or services.  Thus, Count II should be dismissed for this additional reason.

### B.    Plaintiff's FDUTPA Claims Fail As Plaintiff Does Not Allege Actual Damages

Plaintiff has failed to plead its two claims under FDUTPA as the Complaint does not

---

[7]    *See also Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012) (dismissing dilution claim because marks did not identify or distinguish goods or services); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 524 (S.D.N.Y. 2008) (dismissing dilution claim because "[defendant] has *not* used the Tiffany mark to identify *its own* goods and services"), *aff'd*, 600 F.3d 93 (2d Cir. 2010).

contain any allegations of "actual damages" as required by the Florida statute.  § 501.211(2), Fla. Stat.  Although Plaintiff conclusorily asserts that it is damaged and Epic Games has been unjustly enriched, Compl. ¶¶ 108, 112, Plaintiff's claim seeks monetary damages in the form of alleged lost profits, which are the "quintessential example of consequential damages."  *See Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987) (internal quotation marks omitted); *see also Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012); *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000).  Because consequential damages are not cognizable under FDUTPA, Plaintiff's FDUPTA claims should be dismissed.  *See Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824–25 (Fla. 4th DCA 2010) ("Proof of actual damages is necessary to sustain a FDUTPA claim. The statute does not allow the recovery of other damages, such as consequential damages." (internal citation omitted)).

A claim for damages under FDUPTA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *ADT,* 2017 WL 5640725, at *5 (citing *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc*., 169 So. 3d 164, 167 (Fla. 4th DCA 2015)).  "'[A]ctual damages' under FDUTPA is a term of art."  *Eclipse Med.*, 262 F. Supp. 2d at 1357.  "In the context of FDUTPA," it means "'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)); *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985)).  Critically, "under FDUTPA, the

term 'actual damages' does not include special or consequential damages." *Rodriguez*, 38 So. 3d at 180 (citing *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004)); *see also BPI Sports, LLC v. Labdoor, Inc.*, No. 15 Civ. 62212, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016) (harm in the manner of competitive harm, diverted or lost sales, and harm to the goodwill and reputation of plaintiff are consequential damages); *Orkin Exterminating Co. v. DelGuidice*, 790 So. 2d 1158, 1162 (Fla. 5th DCA 2001); *Urling*, 468 So. 2d at 454; *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314–15 (Fla. 4th DCA 1998).[8]

Here, Plaintiff has failed to allege anything like a difference in the market value of a product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered. Although Plaintiff alleges general injury to customers, it does not allege any difference in what consumers paid for its services as a result of the alleged violation of FDUTPA. Thus, as Plaintiff seeks only consequential monetary damages and fails to allege actual damages under FDUTPA, Counts V and VI must be dismissed. *See ADT*, 2017 WL 5640725, at *5.

## CONCLUSION

For the foregoing reasons, Epic Games respectfully requests that its motion to dismiss be granted in its entirety and that the Complaint be dismissed. Moreover, as further pleading by Plaintiff would be futile, Epic Games requests that the dismissal be with prejudice.

---

[8]    Although one court has stated that actual damages also may include "actual lost profits," *ADT LLC v. Alarm Prot. Tech. Fla., LLC*, No. 12 Civ. 80898, 2013 WL 11276119, at *5 (S.D. Fla. Apr. 18, 2013), most courts have rejected that reading of FDUTPA. *See Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*, No. 15 Civ. 81062, 2016 WL 4256916, at *6 (S.D. Fla. May 16, 2016) (summarizing the history of FDUTPA and dismissing plaintiff's claim for failure to state a claim because lost profits are not actual damages under the statute); *see also Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, No. 18 Civ. 4903, 2019 WL 3802096, at *1 (S.D.N.Y. Aug. 13, 2019) (rejecting *ADT* "for the reasons set forth in *Diversified*. . . FDUTPA 'actual damages' do not include lost profits even when sought by a competitor rather than a consumer.").

Dated: October 9, 2020                         Respectfully submitted,

_/s/ Gavin C. Gaukroger_
Gavin C. Gaukroger (Fla. Bar. No. 76489)
Email: ggaukroger@bergersingerman.com
Email: DRT@bergersingerman.com
**BERGER SINGERMAN LLP**
350 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL 33301
Tel. (954) 525-9900

DALE M. CENDALI (admitted _pro hac vice_)
Email: dale.cendali@kirkland.com
JOSHUA L. SIMMONS (admitted _pro hac vice_)
Email: joshua.simmons@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel. (212) 446-4800

_Attorneys for Defendant_